UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE
EXTRADITION OF:

LUIS SILVA-PERALTA

Case No.:  15-MJ-3444-WVG

**CERTIFICATION OF
EXTRADITABILITY AND ORDER
OF COMMITMENT**

In this proceeding under 18 U.S.C. § 3184, the United Mexican States ("Mexico"), through the United States Government ("the Government"), request the extradition of Luis Silva-Peralta under the provisions of the Extradition Treaty between the United States of America and Mexico, May 4, 1978 ("Treaty").  Mexico seeks to extradite Silva to answer to a charge of Aggravated Homicide by Advantage.  For the reasons set forth below, the Court **GRANTS** the request for extradition and **CERTIFIES** Silva as extraditable.

/ / /

/ / /

/ / /

/ / /

# I.   BACKGROUND

A.   Procedural History

On November 20, 2015, the Government, on behalf of Mexico, filed a Complaint for Provisional Arrest With a View Towards Extradition against Silva. (Doc. No. 1.)  The Honorable Mitchell D. Dembin, United States Magistrate Judge, issued an arrest warrant on the same day. (Doc. No. 2.)  Silva, a legal resident of the United States, was arrested on February 19, 2016 and made an initial appearance before this Court on February 22, 2016. (Doc. Nos. 2-4.)  The Court held a status hearing on February 26, 2016 to determine whether Silva should be held in custody pending resolution of extradition proceedings. (Doc. No. 7.)  Soon thereafter, on March 9, 2016, the Court issued an order detaining Silva without prejudice. (Doc. No. 9.)  The Court held an additional status hearing on April 21, 2016, during which an extradition hearing was scheduled for May 5, 2016. (Doc. No. 10.)  On May 4, 2016, the United States filed Mexico's formal request for extradition, made to the U.S. Department of State and supported by documentary evidence. (Doc. Nos. 11-13.)

At the hearing on May 5, 2016, Silva asked the Court to represent himself and remove appointed counsel. (Doc. No. 14.)  Subsequently, during a status hearing on May 31, 2016, Silva requested a competency hearing. (Doc. No. 17.)  On June 16, 2016, the parties submitted a Joint Memorandum regarding Silva's right to counsel and his request for a competency evaluation. (Doc. No. 19.)  The Court held another status hearing on July 11, 2016, and shortly thereafter, on August 2, 2016, issued an Order denying both the request to proceed pro se and the request for a mental evaluation. (Doc. No. 36.)

In the meantime, the United States filed its Memorandum of Law in Support of Mexico's Request for Extradition and supplemental briefing on May 27, 2016, and July 6, 2016, respectively. (Doc. Nos. 16, 22.)  Silva filed his Response and Opposition to the Government's Extradition Request on August 15, 2016. (Doc. No. 37.)  The United States filed its Reply on August 22, 2016. (Doc. No. 38.)  The extradition hearing was held on

August 31, 2016 before the undersigned, at which time the matter was taken under submission.  (Doc. No. 39.)

B.      The Request for Extradition

        Mexico seeks to extradite Silva to answer to the charge of Aggravated Homicide by Advantage, which allegedly occurred on February 13, 2012 in violation of Articles 123, 126, 147, and 148 of Section II of the Penal Code of Baja California State, Mexico ("Baja Penal Code").  (Doc. No. 31.)

        The evidence submitted in support of the extradition request consists of the following eleven exhibits that accompany the sworn affidavit of Maria Ruiz Juarez, Agent of the Federal Public Prosecutor:[1]

(1)     Arrest warrant dated May 2, 2013, issued for "Luis Silva Peralta," in criminal case 00692/2013 (also referred to as criminal case 00692/2013 NUC NO. 02-2012-06722), of the index of the Judge of the Constitutional Control Court for the Judiciary Branch of Mexicali, in the State of Baja California, for Silva's probable responsibility in the commission of the crime of aggravated homicide due to unfair advantage;

(2)     Extract of the texts of the legal provisions specifying the elements defining the charged crime, penalty and those related to the statute of limitations;

(3)     Certification dated August 9, 2013, by which the Preliminary Hearing Judge, attested that the right to punish will lapse in 50 years, and the precise date on which the statute of limitation shall run is May 2, 2063;

(4)     Extract of the Notice record addressed to the Public Prosecutor, for probable criminal events, dated February 19, 2012, signed the Agent of the Ministerial Police in the State of Baja California;

(5)     Extract of the Inspection Proceedings and Processing of the Crime Scene, dated February 19, 2012, signed by the Agent of the Ministerial Police of the State of Baja California;

_____

[1] All of these documents were certified and authenticated on April 6, 2016 by Donald E. Jacobson, Minister Counselor for Consular and Consulate Affairs of the United States.

3

(6)   Certificate of Autopsy from the Forensic Medical Service of the Judiciary Branch of Baja California, dated February 19, 2012, signed by the Expert in Forensic Medicine, Jesus Garcia Quevedo;

(7)   Extract of the Record of the Victim or Offended Party and Witnesses Interviews, dated February 20, 2012, signed by Ruben Nuñez Valenzuela;

(8)   Extract of the Investigation Report dated April 26, 2013, signed by Juan Ramon Armenta Cota, Agent of the Ministerial Police of the State of Baja California;

(9)   Extract of the Criminalistics Expert's record dated November 8, 2012, signed by Marco Antonio Palomares Alvarado;

(10)   Identification proceedings on photo array, dated February 20, 2012, by Ruben Nuñez Valenzuela;

(11)   Photograph of "Luis Silva Peralta."

Documentary Evidence ("Doc. Evid."), Exs. 1-11.

## II.   Legal Standards

A.   Extradition: General Principles

Extradition from the United States is a diplomatic process that is initiated when a foreign nation requests extradition of an individual from the United States Department of State. Prasoprat v. Benov, 421 F.3d 1009, 1012 (9th Cir. 2005); Manta v. Chertoff, 518 F.3d 1134, 1140 (9th Cir. 2008). "After the request has been evaluated by the State Department to determine whether it is within the scope of the relevant extradition treaty, a United States Attorney . . . files a complaint in federal district court seeking an arrest warrant for the person sought to be extradited." Blaxland v. Commonwealth Dir. of Pub. Prosecutions, 323 F.3d 1198, 1207 (9th Cir. 2003). "A judge or magistrate judge must then hold an extradition hearing to determine if the evidence is sufficient to sustain the charge of extradition under the relevant treaty." Manta, 518 F.3d at 1140. "Extradition treaties are to be liberally construed so as to affect their purpose, that is, to surrender fugitives for

4

trial for their alleged offenses." <u>Valentine v. United States ex rel. Neidecker</u>, 299 U.S. 5, 14 (1936).

The authority of a magistrate judge serving as an extradition judicial officer is limited to determining an individual's eligibility to be extradited, which is done by ascertaining (1) whether the crime is an extraditable offense under the subject treaty and (2) whether probable cause exists to sustain the charge. <u>Vo v. Benov</u>, 447 F.3d 1235, 1237 (9th Cir. 2006). If the judge determines that these requisite elements have been met, the findings are incorporated into a certificate of extraditability. <u>Id.</u> The certificate is forwarded to the Department of State. The Secretary of State makes the ultimate decision on whether to surrender the individual to the requesting country. 18 U.S.C. § 3186.

B.   <u>The Extradition Hearing</u>

An extradition proceeding is not a trial[.]" <u>Emami v. United States Dist. Court</u>, 834 F.2d 1444, 1452 (9th Cir. 1987). "The only purpose of the extradition hearing is for the magistrate judge to determine whether the crime is extraditable and whether there is probable cause to support the charge." <u>Prasoprat</u>, 421 F.3d at 1014 (citation omitted). Thus, "discovery in an international extradition hearing is limited and lies within the discretion of the magistrate [judge]." <u>U.S. v. Kraiselburd (In re Extradition of Kraiselburd)</u>, 786 F.2d 1395, 1399 (9th Cir. 1986). The Court's role is "not [to] weigh conflicting evidence and make factual determinations but, rather, [to] determine [] only whether there is competent evidence to support the belief that the accused has committed the charged offense." <u>Quinn v. Robinson</u>, 783 F.2d 776, 815 (9th Cir. 1986). "Because of the limited function of an extradition proceeding and the limited participation permitted of the fugitive, the order of the court does not reflect a consideration of all the merits of the case." <u>Hooker</u>, 573 F.2d at 1368.

In order for the Court to find Silva is extraditable, the Government has to satisfy each of the following seven elements: (1) the Court has subject matter jurisdiction to

conduct the extradition proceedings; (2) the Court has personal jurisdiction over the individual sought; (3) a valid extradition treaty is in force between the United States and the requested state; (4) criminal charges are pending against the accused in the requested state; (5) the crime or crimes charged against the accused are encompassed within the extradition treaty; (6) probable cause exists that the accused committed the crime charged; and (7) the statute of limitations has not run. See 18 U.S.C. § 3184. The Court addresses each in turn below.

## III.    DISCUSSION

### A.    Authority of Judicial Officer

The authority of a magistrate judge to conduct extradition proceedings is provided by 18 U.S.C. § 3184, Ward v. Rutherford, 921 F.2d 286, 289 (D.C. Cir. 1990), and Criminal Local Rule 57.4(a)(3). Silva does not challenge the Court's authority over these proceedings. The Court has the authority to conduct these extradition proceedings.

### B.    Jurisdiction Over the Individual Sought

The Court has jurisdiction over the individual sought if he is before the Court. In re Pazienza, 619 F. Supp. 611, 616 (S.D.N.Y. 1985). Silva does not challenge the Court's jurisdiction over him, which the Court finds it has.

### C.    Existence of a Treaty

In determining whether the subject crime is an extraditable offense, the Court must find that an extradition treaty exists between the United States and Mexico. Vo, 447 F.3d at 1237 (citing 18 U.S.C. § 3184).

The Government has submitted a declaration from Ron B. Katwan, Attorney Adviser, U.S. Department of State, dated May 3, 2016, which establishes that the Extradition Treaty between the United States and Mexico, TIAS 9656, was signed on May 4, 1978 and is presently in full force and effect. (Katwan Decl. ¶ 3, Doc. No. 11-1 at 2.) A copy of the Treaty is attached to the declaration. (See id. at 15-36.) Mr. Katwan's

statement on this matter is entitled to deference.  See Matter of Extradition of Mainero, 990 F. Supp. 1208, 1216 (S.D. Cal. 1997) (finding that State Department's opinion on force and effect of treaty is entitled to deference).  Moreover, Silva does not contest the existence of the Treaty.  An extradition treaty exists between the United States and Mexico.

D.   Criminal Charges Pending in Mexico

Next, there must be criminal charges pending against the accused in the requested state.  18 U.S.C. § 3184; see also Quinn, 783 F.2d at 782.  The declaration of Ron B. Katwan, submitted by the Government on behalf of Mexico, confirms Mexico's request to extradite Silva is for the purpose of answering to a pending charge of Aggravated Homicide by Advantage, pursuant to an arrest warrant issued by the Control Judge in Preliminary Proceedings for the Judicial District of Mexicali, Baja California, on May 2, 2013.  See Diplomatic Note 01750.  Moreover, the extradition request and attached documentary evidence sufficiently demonstrates this element, and Silva does not challenge it.  Therefore, the Court finds there are criminal charges pending against Silva in Mexico.

E.   Treaty Coverage

Next, the crime charged must be covered by the applicable extradition treaty in order for the subject crime to be an extraditable offense.  Vo, 447 F.3d at 1237 (citing 18 U.S.C. § 3184).  The Treaty sets forth the following with respect to "Extraditable Offenses":

> 1.- Extradition shall take place, subject to this Treaty, for wilful acts which fall within any of the clauses of the Appendix and are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall not be less than one year.

Treaty, art. 2, para. 1.  (Doc. No. 11-1 at 20.)  The crime charged, Aggravated Homicide by Advantage, is covered by the Treaty.

First, Article 126 specifies that the crime of aggravated homicide is punishable by imprisonment for 20 to 50 years.  Additionally, the Katwan Declaration provides that "[t]he offense for which extradition is sought is punishable in accordance with the laws of both

7

contracting parties by deprivation of liberty for a period of at least one year, and is covered under Article 2 of Treaty." (Katwan Decl. ¶ 5, Doc. No. 11-1 at 2.) Again, Mr. Katwan's opinion is entitled to deference. See Kolovrat v. Oregon, 366 U.S. 187, 194 (1961) (stating that opinion of State Department on meaning given to treaty is given great weight). Consequently, because the maximum punishment for the offense with which Silva is charged is at least one year, the offense falls within the Treaty's minimum temporal requirement.

Next, Article 2(1) of the Treaty also contains a dual criminality requirement. Under the principle of dual criminality, "no offense is extraditable unless it is criminal in both jurisdictions." Caplan v. Vokes, 649 F.2d 1336, 1343 (9th Cir. 1981) (citing Collins v. Loisel, 259 U.S. 309, 312 (1922)). "It is well established that all the principle of dual criminality requires is that the particular acts alleged constitute a crime in both jurisdictions." Emami, 834 F.2d at 1450. "The name by which the crime is described in the two countries need not be the same, nor need the scope of the liability for the crimes be either coextensive or the same in both countries." Id. Instead, "dual criminality exists if the 'essential character' of the acts criminalized by the law of each country are the same and if the laws are 'substantially analogous.'" Theron v. United States Marshal, 832 F.2d 492, 496 (9th Cir. 1987), abrogated on other grounds by United States v. Wells, 519 U.S. 482 (1997). In assessing dual criminality, the extradition magistrate judge may consider, in order of preference, similar criminal provisions of federal law, similar laws of the state in which the fugitive was found, and the law of the preponderance of the states. Id.

Here, the Government has satisfied the dual criminality requirement. In Mexico, the crime of Aggravated Homicide by Advantage is covered by Articles 123, 126, 147, and 148 of Section II of the Baja Penal Code. Article 123 defines homicide as the following: "The crime of homicide is committed by whomever takes another's life." Baja Penal Code, art. 123. Article 147 defines aggravated homicide as the following: "It is understood that

8

bodily injuries and homicide are aggravated when they are committed with malice aforethought, unfair advantage, lying in wait or treachery." Id. at art. 147.

In the United States, this crime is most analogous to the crimes of murder and manslaughter under federal law. See 18 U.S.C. §§ 1111 (murder), 1112 (manslaughter). Under 18 U.S.C. § 1111(a), murder is defined as "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a). Every murder executed by "poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing . . . or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed" is classified as murder in the first degree. Id. Any other murder is classified as murder in the second degree. Id. The crime of manslaughter is defined as "the unlawful killing of a human being without malice," and is of two kinds, voluntary or involuntary. 18 U.S.C. § 1112(a).

Moreover, Silva does not contest that the crime charged is covered by the Treaty. The Court finds that the crime charged constitutes an extraditable offense under Article 2 of the Treaty.

## F.   Probable Cause

Next, the Court must determine whether probable cause exists to believe Silva committed the charged offense in Mexico. Although Silva contends probable cause is lacking, the Court finds probable cause exists for extradition purposes.

### 1.   General Legal Standard and Standard of Evidence Admissibility

In an extradition proceeding, the central function of the magistrate judge is to determine whether there is competent evidence to justify holding the accused to await trial in the requesting state, and not to determine whether the evidence is sufficient to convict. Collins, 259 U.S. at 316; Hooker, 573 F.2d at 1367. "The extradition proceeding . . . makes no determination of guilt or innocence." Valencia v. Limbs, 655 F.2d 195, 198 (9th Cir. 1981). Probable cause exists when there is "evidence sufficient to sustain the charge under

9

the provisions of the proper treaty or convention." <u>Vo</u>, 447 F.3d at 1237 (citing 18 U.S.C. § 3184); <u>see also</u> <u>Quinn</u>, 783 F.2d at 791 ("Because the [magistrate judge's] probable cause finding is thus not a finding of fact in the sense that the court has weighed the evidence and resolved disputed factual issues, it must be upheld if there is any competent evidence in the record to support it.")

"Competent evidence to establish reasonable grounds [to believe the accused guilty] is not necessarily evidence competent to convict." <u>Fernandez v. Phillips</u>, 268 U.S. 311, 312 (1925). If the magistrate judge finds probable cause to sustain the charge, he or she "is required to certify the individual as extraditable to the Secretary of State." <u>Blaxland</u>, 323 F.3d at 1208.

The admissibility of evidence in extradition matters is controlled by 18 U.S.C. § 3190, not by State law, the Federal Rules of Evidence, nor the Federal Rules of Criminal Procedure. <u>See</u> <u>Escobedo v. United States</u>, 623 F.2d 1098, 1103 (5th Cir. 1980) (stating that section 3190, not state law, controls admissibility), Fed. R. Evid. 1101(d)(3); Fed. R. Crim. P. 1(a)(5)(A). As 18 U.S.C. § 3190 makes clear, "authentication is the only requirement for admissibility of evidence under general United States extradition law. <u>Oen Yin-Choy</u>, 858 F.2d at 1406; <u>see also</u> <u>Zanazanian v. United States</u>, 729 F.2d 624, 627 (9th Cir. 1984). The Supreme Court has held that extradition may be predicated entirely on the "unsworn statements of absent witnesses." <u>Collins</u>, 259 U.S. at 317. Indeed, both sworn and unsworn statements contained in properly authenticated documents are permissible. <u>Artukovic v. Rison</u>, 784 F.2d 1354, 1356 (9th Cir. 1986). Additionally, hearsay evidence is permitted in extradition proceedings. <u>Then v. Melendez</u>, 92 F.3d 851, 855 (9th Cir. 1996); <u>Escobedo</u>, 623 F.2d at 1102 n.10.

2. <u>The Evidence The Government Has Presented Is Admissible</u>

As long as there is no conflict with the provisions of the subject treaty, evidence that has been authenticated is admissible in extradition proceedings. <u>Emami</u>, 834 F.2d at 1451.

The Documentary Evidence submitted by the Government on behalf of Mexico was properly authenticated, and Silva has not presented any argument or evidence to the contrary. Mexico's request for extradition and the supporting documents comply with Article 10 of the Treaty, which requires the Court to receive in evidence documents that are certified by the principal "diplomatic or consular officer of the United States in Mexico." Treaty, art. 10, para. 6. Therefore, under the general extradition law of the United States and the provisions of the Treaty, all of the documents contained in the Documentary Evidence submitted by the Government on behalf of Mexico are admissible for purposes of this extradition proceeding.

3.   The Government Has Satisfied the Probable Cause Requirement

The Court now turns to whether, under the totality of evidence Mexico has provided, there is probable cause to believe Silva committed the charged offense, see Quinn, 783 F.3d at 787, and concludes that the Government has satisfied the probable cause requirement.

a.   Summary of Evidence Provided by Mexico

i.   March 23, 2016 Maria Ruiz Affidavit

According to Maria Ruiz Juarez, an Agent of the Federal Public Prosecutor, an investigation began on February 19, 2012. This investigation was initiated by a phone call placed to the emergency number at the city hall of Mexicali, Baja California, reporting a vehicle blocking access to the highway leading to San Felipe, Mexicali, and also reporting a corpse lying next to the vehicle. Juarez's affidavit establishes that an arrest warrant was issued on May 2, 2013 for Silva. The affidavit further recounts the details of the ensuing investigation including statements from the record of Valenzuela. Ultimately, Juarez's affidavit asserts that Silva is the person responsible for the commission of the crime of Aggravated Homicide by Advantage and serves to strengthen Mexico's formal request for extradition of Silva.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii.     Notice for Probable Criminal Events

According to Mexico's notification to the Public Prosecutor about an allegedly criminal act, on February 19, 2012, a call came in to the emergency hotline of the municipality of Mexicali Baja California, reporting that on San Felipe Road, Mexicali, Baja California, a car was blocking access to the road, and a body was found approximately one kilometer away from the car.  See Doc. Evid., Ex. 4.

iii.     Inspection Proceedings and Processing of the Crime Scene

The inspection proceedings and processing of the crime scene ascertain that police assigned to the Attorney General Office of Baja California State responded to the scene on February 19, 2012.  See Doc. Evid., Ex. 5.  Upon arriving at the scene, authorities found a brown 1997 Ford Crown Victoria bearing California license plate number 3VIZ110.  See id.  After further inspection of the scene, the police discovered the naked body of a woman in the state of putrefaction.  Id.  Near the body were rocks of various sizes with reddish brown stains, a sharp metal blade with no handle (seeming to belong to a knife) with reddish brown stains and dirt, four tire tracks, and a black leather wallet.  Id.  The wallet contained the following: (1) cash; (2) two photographs of a man, including one with a man in military clothes; (3) a Visa debit card; (4) a Social Security card; (5) a Department of Veterans Affairs identification card; (6) a California Driver's license; and (7) a United States Permanent Resident Card.  Id.  All five cards found in the wallet were in the name "Luis Silva Peralta."  Id.  The address listed on the driver's license was 1007 Scott Avenue, El Centro, California, 92243.  Id.

iv.     Autopsy Report

The autopsy report issued on February 19, 2012 concluded that the cause of death was traumatic brain injury.  See Doc. Evid., Ex. 6.  The report also observed that the body displayed multiple stab wounds, cuts, and scrapes on the left lateral side of the neck, the pectorals, and back of the left arm, as well as fractures of all facial bones.  Id.

v.      Criminalistics Expert Record

The criminalistics report of February 19, 2012 determined that the decedent had been dead between four and seven days.  See Doc. Evid., Ex. 9.

vi.      Agent Cota Investigation Report

An investigation report issued on April 25, 2013 by Juan Ramon Armenta Cota, Agent of the Ministerial Police of the State of Baja California, established that during the investigation, the police learned the vehicle located at the scene of the crime was registered to Silva Aristeo and Silva Angela (identified as Silva's parents).  See Doc. Evid., Ex. 8. The vehicle was registered at the same address found on Silva's drivers license.  See id.

This report also notably disclosed that Silva last crossed into the United States from Mexico on February 13, 2012, at 7:30 p.m., through the Calexico Port of Entry.  See id.

vii.      Record of the Ruben Nunez Valenzuela, the Witness

As detailed above, Valenzuela reported to authorities in Baja California because his romantic partner was missing and he learned though a local newspaper that a female body had been found.  See Doc. Evid., Ex. 7.  After being presented with photos, Valenzuela recognized the body as his romantic partner.  Id.  Valenzuela told authorities he last saw her get into a brown Crown Victoria at 7:30 a.m. on February 13, 2012.  Id.  He then asserted that his partner routinely offered sexual services and he recognized the Crown Victoria as a vehicle that solicited these services to others on numerous occasions.  Id. Valenzuela was able to describe the driver of the Crown Victoria as approximately 50 years of age, with black-and-white peppered hair, among other features.  Id.  Valenzuela also informed authorities that he had not seen the driver of the Crown Victoria again since the morning of February 13, 2012.  Id.

viii.      Photo Identification

On February 20, 2012, Valenzuela appeared before the Public Prosecutor for a photographic lineup viewing.  Doc. Evid. Ex. 10.  Authorities showed him a lineup

consisting of five photos, and he identified the individual appearing in photograph number four, which depicts Silva, as the driver of the brown Crown Victoria who picked up the victim on the morning of February 13, 2012.

ix.   <u>Arrest Warrant</u>

On May 2, 2013, an arrest warrant was issued by the Judge of the Constitutional Control Court for the Judiciary Branch of Mexicali, in the State of Baja California for the arrest of Luis Silva-Peralta for his probable responsibility in the commission of the crime of Aggravated Homicide by Advantage.  Doc. Evid., Ex. 1.

b.   <u>Silva's Contentions Regarding Probable Cause Generally</u>

Silva contends the evidence provided by Mexico is insufficient to satisfy probable cause.  In this regard, Silva asserts the evidence presented merely establishes that he may have been present near the crime scene.  Silva states probable cause requires more than "surmise or suspicion," and thus that his possible presence near the scene of the crime is insufficient to meet the probable cause requirement.

c.   <u>Discussion</u>

i.   <u>The Evidence Supplied by Mexico Supports a Finding of Probable Cause.</u>

The evidence supplied by Mexico is sufficient to support a finding of probable cause that Silva committed the charged crime.  The evidence in this case reveals that Valenzuela saw the victim enter a brown Crown Victoria on February 13, 2012.  <u>See</u> Doc. Evid., Ex. 7.  Valenzuela was able to identify the driver of the Crown Victoria based on Valenzuela's prior observations of Silva on various occasions when Silva solicited the victim's services.  <u>Id.</u>  Six days after Valenzuela saw Silva pick up the victim, on February 19, 2012, the victim was found dead near a landfill and in a state of decomposition.  <u>See</u> Doc. Evid., Ex. 5.  A criminalistics report found that the victim had likely been dead for 4-7 days.  Doc. Evid., Ex. 9.  Near the body, authorities found several identification documents belonging

14

to Silva as well as his Crown Victoria.  <u>See</u> Doc. Evid., Ex. 5.  During the investigation, officers learned the Crown Victoria was registered to individuals later identified as Silva's parents, who share the same address as Silva in El Centro, California.  <u>See</u> Doc. Evid., Ex. 8.  Furthermore, Silva was last known to have crossed into the United States from Mexico on February 13, 2012, at 7:30 p.m., through the Calexico Port of Entry, which is the port of entry nearest to El Centro.  <u>Id.</u>

The above evidence goes beyond merely randomly placing Silva near the scene of the crime.  Silva was known to associate with the victim in the past—they were not strangers—and Valenzuela had previously seen Silva transporting the victim in the same car found abandoned at the crime scene.  Moreover, Valenzuela saw Silva pick the victim up on the day she disappeared, which was within the timeframe Mexican authorities believe she had been killed.  The evidence establishes the victim was familiar with Silva, he was possibly the last person seen with the victim, the victim got into Silva's vehicle on the day she was possibly murdered, Silva's identification documents and vehicle were found in a remote area close to the victim's body, and that he quickly fled from Mexico.  The evidence above, taken together, paints a picture of Silva fleeing to the United States after he committed the charged offense, leaving behind his car, wallet, Social Security card, identification, and credit cards in his haste to flee the crime scene, victim, and murder weapon.

Ultimately, the evidence above may or may not be sufficient to sustain a conviction, but such is beyond the scope of the Court's role in the instant proceedings.  Under the totality of evidence Mexico has provided for the limited purpose of these extradition proceedings, the Court finds there is probable cause to believe that Silva committed the charged offense.

/ / /

/ / /

4.    <u>The Evidence Establishes Silva is the Party Named in the Extradition Complaint</u>

"At an extradition hearing, the court is required to determine whether the party before [it] is the party named in the extradition complaint." <u>Manta</u>, 518 F.3d at 1143 (citation omitted). "Whether the person before the court is the accused is part of the magistrate judge's probable cause analysis." <u>Id.</u> (citation omitted). There must be "competent proof" of identity. <u>Id.</u> "An identification based on a single photograph may be competent evidence of identity in an extradition proceeding." <u>Manta</u>, 518 F.3d at 1145 (citation omitted). "[T]he credibility of the reported identification is a matter committed to the magistrate [judge]." <u>Id.</u> at 1145 (citation omitted). There is no *per se* rule that specifies which identification procedures are competent for probable cause purposes. <u>Quinn</u>, 783 F.2d at 815. The Court's function is simply to determine "whether there [i]s any evidence warranting the finding that there [i]s a reasonable ground to believe the accused guilty." <u>Mirchandani v. United States</u>, 836 F.2d 1223, 1226 (9th Cir. 1988) (quoting <u>Fernandez v. Phillips</u>, 268 U.S. 311, 312 (1925)).

Silva (*i.e.*, the person named in the extradition request) is described as a male of Mexican descent, with a date of birth of January 24, 1960 (age 54), and a height of roughly 5'11 inches. May 3, 2016 Ron B. Katwan Aff.; Diplomatic Note 01750. The Documentary Evidence includes a photograph, allegedly of Silva, chosen out of a photo lineup by witness Robert Nuñez Valenzuela (hereafter "Valenzuela"). Doc. Evid., Ex. 10. Silva challenges his identification by Valenzuela during Mexican law enforcement's investigation of the murder of Rocio Kactzumen Lopez Gastelum ("the victim").

a.    <u>Evidence of Identity Supplied by Mexico: Record of Valenzuela</u>

According to the record of the witness, Valenzuela, dated February 20, 2012, Valenzuela learned through a local Baja newspaper that a woman's body had been found on a roadway. <u>See</u> Doc. Evid., Ex. 7. When he saw this report, Valenzuela went to law enforcement authorities in Baja California because his romantic partner, the victim, had

16

been missing since February 13, 2012.  Id.  After being presented with photographs of the body found on the road leading to San Felipe, Mexicali, Baja California, Valenzuela recognized it as the body of his romantic partner, the victim.  Id.  Valenzuela told law enforcement authorities that he last saw the victim at 7:30 a.m. on February 13, 2012, when he saw her get into a brown Crown Victoria with American license plates.  Id.  Valenzuela was aware that the victim routinely offered sexual services, and he was familiar with the place from where the victim usually offered such services.  Id.  On the morning of February 13, 2012, Valenzuela testified that had gone looking for the victim when he saw her get into the brown Crown Victoria.  Id.  He recognized the brown Crown Victoria as a vehicle that had solicited sexual services from the victim on several occasions.  Id.  He described the driver of the brown Crown Victoria as approximately 50 years old and roughly 5'5 inches tall, among other characteristics, such as having black and white peppered hair.  Id. When presented with a photo line-up, Valenzuela identified Silva as the driver of the brown Crown Victoria who picked up the victim on the morning of February 13, 2012.  Id. Valenzuela also informed authorities that he had not seen Silva again since that morning. Id.

> b.    Silva's Contentions Regarding Valenzuela's Identification

Silva contends that the identification by Valenzuela must be questioned based on the seven-day gap between the day the crime allegedly occurred and the day Valenzuela's identification occurred.  Silva further questions Valenzuela's identification because Valenzuela described Silva as roughly 5'5 inches tall when in fact Silva is 5'11 inches tall. In sum, Silva questions Valenzuela's ability to view the driver of the brown Crown Victoria on the morning of February 13, 2012, as well as his ability to later accurately recite what he saw that day.

/ / /

/ / /

1

2

3
      c.    <u>Discussion</u>

            i.    <u>The Evidence Supplied by Mexico Establishes that Silva was Sufficiently Identified.</u>

4

5

6

7
      Keeping in mind that issues of credibility are to be resolved at trial, not at the extradition hearing, <u>Bovio</u>, 989 F.2d at 259, the Court finds Valenzuela's testimony constitutes competent evidence that Silva is the individual wanted by Mexico for the offense alleged in the extradition request.

8

9

10

11

12

13

14

15

16

17

18

19

20
      The passage of one week between the day of the alleged crime and Valenzuela's identification and Valenzuela's potential inability to accurately assess Silva's height are only two of many factors the Court considers in determining whether a sufficient identification has been made.  In considering Valenzuela's testimony in conjunction with the additional evidence and exhibits provided by Mexico, as well as the evidence contained in the extradition papers, the identification of Silva was sufficient to satisfy the requirements under the law in this Circuit as it relates to extradition.  Valenzuela's identification of Silva was reliable, as it was based on his familiarity with Silva after he had seen Silva on multiple occasions in the past.  This is not a case of an eye-witness identification of someone the witness had seen only once before.  Additionally, the Court's own observation of Silva at the extradition hearing and comparison to the photograph in the record (<u>see</u> Doc. Evid., Ex. 11) and age as reflected in the extradition request (age 54) further establish his identity as the person sought for extradition.

21

22

23
      The Court accordingly finds that the "Luis Silva-Peralta" named in the request for extradition and the person brought before this Court on the Complaint for Extradition are the same person.  The Government has satisfied the identity requirement.

24
G.    <u>Statute of Limitation</u>

25

26
      Silva contends, pursuant to Article 7 of the Treaty, that extradition should be barred because the lapse of time between the issuance of the arrest warrant and the commencement

27

28

of extradition proceedings violates the Sixth Amendment.[2]  As argued in the Government's reply brief, which the Court now adopts, lapse of time as that term is used in Article 7 of the Treaty is synonymous with and equivalent to the statute of limitations.  See Clarey v. Gregg, 138 F.3d 764, 766 (9th Cir. 1998) (interpreting "lapse of time" to refer to the statute of limitations for the offense; "The object of Article 7 of the Treaty is to preclude extradition of a person whose prosecution in the United States would offend our national statute of limitations if he had committed his criminal conduct here"); see also Causbie Gullers v. Bejarano, 293 Fed. Appx. 488, 489 (9th Cir. 2008) ("For the [defendant] to be extraditable, the prosecution against her must fall within the statute of limitations according to the laws of both the 'requesting party,' i.e., Mexico, and the 'requested party,' i.e., the United States.") (unpublished).  Thus, the Courts looks to whether Silva's prosecution is barred by the applicable statute of limitations.

      1.    Statute of Limitations Under Mexican Law

According to Baja Penal Code, article 114 BIS, which governs the statute of limitations for the charged crime, Mexico has timely charged Silva in accordance with the statute of limitations.  The judicial order dated August 9, 2013, issued by the Control Judge for Preliminary Proceedings of the Judicial District of Mexicali, Baja California, states that according to Articles 114 and 114 BIS of the Baja Penal Code, the statute of limitations will expire in 50 years.  Mexico brought charges against Silva well within that period.  The Court accordingly finds that Mexico's prosecution of Silva for Aggravated Homicide by Advantage is not time-barred under Mexican law.

/ / /

---

[2] The lapse of time in this cases does not implicate the Sixth Amendment.  See United States v. Martinez, No. 14-5860, __F.3d__, *available at* 2016 WL 3632599, at 9, 2016 U.S. App. LEXIS 12501, at 30 (6th Cir. July 9, 2016) (en banc) (holding that the "lapse of time" provision of the Treaty does not incorporate the speedy trial guarantee of the Sixth Amendment.)

2.    <u>Statute of Limitations Under United States Law</u>

The crime of Aggravated Homicide by Advantage under Mexican law is most analogous to the crimes of murder and manslaughter in the United States.  <u>See</u> 18 U.S.C. §§ 1111 (murder), 1112 (manslaughter).  Because first-degree murder is punishable by death, charges may be brought at any time, without limitation.  18 U.S.C. § 3281.  Second degree murder and manslaughter, both being non-capital offenses, are governed by the five-year statute of limitations in 18 U.S.C. § 3282(a).

"For purposes of applying statutes of limitation to requests for extradition . . . the period is generally calculated from the time of the alleged commission of the offense to the time of the warrant, arrest, indictment, or similar step in the requesting state, or of the filing of the request for extradition, whichever occurs first . . . ."  <u>Sainez v. Venables</u>, 588 F.3d 713, 716 (9th Cir. 2009) (citation omitted).  In an extradition proceeding, "a Mexican arrest warrant is the equivalent of a United States indictment and may toll the United States statute of limitations."  <u>Id.</u> at 717.

Here, the charged murder occurred on or about February 13, 2012, and Mexico issued an arrest warrant on May 2, 2013—well within the more restrictive five-year statute of limitations for second-degree murder and manslaughter.  The Court accordingly finds that prosecution of the Aggravated Homicide by Advantage charge against Silva is not barred under United States law.

## IV.    CONCLUSION

In summary, the Court finds:

1.    The undersigned judicial officer is authorized under Title 18, United States Code, Section 3184, to conduct an extradition hearing;

2.    The Court has personal jurisdiction over the fugitive and subject matter jurisdiction over the case;

3.      There is currently in force an extradition treaty between the United States and Mexico;

4.      Silva has been charged with Aggravated Homicide by Advantage;

5.      This charge constitutes an extraditable offense within the meaning of the extradition treaty between the United States and Mexico, 31 U.S.T. 5059;

6.      There is probable cause to believe that Silva, the fugitive and the same person before this Court, committed the offense for which his extradition is sought.

7.      Prosecution of the Aggravated Homicide by Advantage charge against Silva is not barred for lapse of time under Mexican or United States law.

Based on the foregoing findings, the Court concludes that Silva is extraditable for the offense for which extradition is requested, and hereby certifies this finding to the Secretary of State as required under Title 18, United States Code, Section 3184.

IT IS FURTHER ORDERED that a certified copy of this Certification of Extraditability and Order of Commitment and of any documents or testimony submitted by or on behalf of Silva be forwarded without delay by the Clerk of Court to the Department of State, to the attention of the Office of the Legal Adviser;

AND IT IS FURTHER ORDERED that Silva be committed to the custody of the United States Marshal for this District pending final disposition of this matter by the Secretary of State and surrender to designated agents of the Government of Mexico.

**IT IS SO ORDERED.**

DATED: September 19, 2016

Hon. William V. Gallo
United States Magistrate Judge

21